UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH CIOLINO,<br><br>        Plaintiff,<br><br>   v.<br><br>AMERIQUEST TRANSPORTATION SERVICES, INC.,<br><br>        Defendant. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 09-1324<br>(JEI/AMD)<br><br>**OPINION** |

**APPEARANCES:**

HAINES & ASSOCIATES
By: Danielle Myriah Weiss, Esq.
1835 Market Street, Suite 2420
Philadelphia, PA 19103
    Counsel for Plaintiff

DILWORTH PAXSON LLP
By: Thomas Vecchio, Esq.
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
    Counsel for Defendant

**IRENAS**, Senior District Judge:

    In this case, Plaintiff Joseph Ciolino ("Ciolino") alleges that Defendant Ameriquest Transportation Services, Inc. ("Ameriquest") violated the terms of his employment contract by diluting his ownership interest in Ameriquest stock. Presently before the Court is Ameriquest's Motion to Dismiss the Complaint for Failure to State a Claim. For the reasons that follow, the Motion will be denied.[1]

---

[1] The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Venue is proper in this Court under 28 U.S.C. § 1391(a).

**I.**

**A.**

The factual recitation that follows accepts as true the facts as alleged in the Complaint and provided in the exhibits thereto. In March, 1998, the parties entered into a Memorandum of Understanding ("MOU") in connection with Ciolino's acceptance of an executive position with Ameriquest.[2] (Compl. ¶ 5; Compl. Ex. A-- Memorandum of Understanding) Pursuant to the MOU, Ciolino's compensation package included a base salary, performance bonuses, commissions, and stock options. (See Compl. Ex. A ¶ 1) In paragraph 1D, the MOU provided the following with respect to Ciolino's stock options:

> Stock options amounting to 2% of the outstanding and issued shares as of the date of employment will be awarded to "employee" upon his first day of employment. The per share price of the options will be at the Initial Offering price (adjusted for stock splits) of $25 per share. The exercise date of the options will be ~~five years~~ *at offering (I.P.O.)* from the first day of employment. Anti dilution provisions will be incorporated with the options so that the options associated with the original 2% will not fall below that percentage of the outstanding stock prior to any Initial Public Offering of the company. Options will fully vest after five years *or at initial public offering within I.P.O. Guidelines*[] of employment and should the employee

---

[2] The MOU identifies the parties thereto as Joseph Ciolino and "Amtralease Truck Leasing Services Corp." ("Amtralease"); no mention is made of Ameriquest. (See Compl. Ex. A-- Memorandum of Understanding) Ciolino does not expressly allege that Ameriquest was formerly known as Amtralease, or that Ameriquest succeeded to the assets and liabilities of Amtralease. However, Ameriquest's brief in support of its current motion does not contest that it was a party to the MOU.
  Although the Complaint does not specify the date that Ciolino began working for Ameriquest, the MOU indicates that he agreed to begin his "employment on or before April 6, 1998[.]" (Compl. Ex. A ¶ 5(2))

>  leave the company prior to the five year vesting period *or Initial Public Offering* he will forfeit all interest in the aforementioned stock options.
>
> ~~Additional stock options will be made available to employee as performance compensation. A pool of up to 8% of the outstanding and issued stock will be set aside for management stock options from which the performance compensation options will be issued. The 8% pool will be in addition to the aforementioned 2% stock option. Performance compensation will be awarded on [an] annual basis.~~ *Additional stock options will be made available of up to 3% of outstanding and issued stock over a 5 year period or prior to an initial public offering. Antidilution provisions will be incorporated as is stated in Item 1D regarding the original 2% stock optio[n] award . . . for a tota[l] of 5%.*[3]

(Compl. Ex. A. ¶ 1D)

Ciolino exercised his option to purchase five percent of Ameriquest's stock.[4] (Compl. ¶ 7) Subsequently, Ameriquest issued additional shares of its stock to other shareholders, but did not offer to issue additional shares to Ciolino. (Id.) As a result, Ciolino currently owns less than five percent of the

---

[3] The agreed-upon version of paragraph 1D of the MOU was the product of extensive, hand-written alterations to the original typed text of that paragraph. The italicized text denotes those portions of the paragraph written by hand. The typed portions of paragraph 1D that were crossed out by hand are indicated by horizontal line through the text.
   Also, although the MOU makes repeated mention of an initial public offering ("IPO"), Ameriquest indicates that no such IPO has occurred, as yet. (See Def.'s Br. 4)

[4] The Complaint does not specify when Ciolino exercised his stock options, other than to describe that exercise as "timely[.]" (Compl. ¶ 7) Stock certificates attached as exhibits to Ciolino's opposition brief indicate that he acquired Ameriquest stock in the following increments: (1) 400 shares on February 8, 2000; (2) 470 shares on May 15, 2002; (3) 886 shares on January 21, 2003; and (4) 558 shares on May 14, 2003. (Pl.'s Br. Ex. B-- Stock Certificates)

outstanding Ameriquest stock.[5]  (See id.)

By letter to Ameriquest dated December 22, 2008, Ciolino sought an accounting of the outstanding shares of Ameriquest stock, as well as tender of sufficient shares, the purchase of which would restore his ownership interest to five percent. (Compl. ¶ 8)  Ameriquest rejected Ciolino's requests.  (Compl. ¶ 9)

Thereafter, Ciolino sought access to a multitude of Ameriquest's books and records, pursuant to the New Jersey Business Corporation Act, N.J.S.A. § 14A:1-1 *et seq.*[6]  (Compl. ¶ 9)  His stated purpose in making that request was to "determine the value of [his] interest in Ameriquest, to determine the extent and nature of the loss caused to [him] by Ameriquest's wrongful dilution of [his] shareholder interests . . ., and to determine whether the corporation is being properly managed."

---

[5] The Complaint and exhibits thereto are silent as to whether and when Ciolino's employment with Ameriquest terminated.  Ameriquest's moving brief states that "[t]here is no dispute that Ciolino no longer works for Ameriquest[.]" (Def.'s Br. 7)  That proposition is not contested by Ciolino in his opposition brief.  (See Pl.'s Br. 11 ("[S]ince he no longer works for Ameriquest . . . ."))

[6] The requested records included:

> all of its books and records of account, cash receipts and disbursement journals, accounts receivable and payable ledgers, financial reports, tax returns, books of original entry, bank reconciliations, documents relating to the valuation and/or sale of assets, minutes of the proceedings of the incorporators, shareholders and directors and a share register giving the names and addresses of all shareholders and the number and class of shares held by each.

(Compl. ¶ 9)

4

(Compl. ¶ 11)  Ameriquest offered only to comply in part with Ciolino's request, by "mak[ing] only certain of the requested items, such as its share register and minutes, available for inspection."  (Compl. ¶ 10)  The company refused to comply with the remainder of Ciolino's inspection demand.  (Id.)

### B.

Ciolino initiated the current action by filing a two count Complaint.  Count I alleges that Ameriquest breached the MOU by diluting Ciolino's stock ownership interest, and seeks a declaration that Ciolino is "entitled to a current and continuing undiluted five percent (5%) interest in Ameriquest."  (Compl. ¶¶ 14, 15)  Count II alleges that Ameriquest violated the New Jersey Business Corporation Act by refusing Ciolino's demand to review its books and records, and asks the Court to direct Ameriquest to provide Ciolino with access to those documents. (Compl. ¶¶ 17-20)

Ameriquest now moves to dismiss the Complaint in its entirety.

### II.

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted."  In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege facts that raise a right to relief above

the speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); see also Fed. R. Civ. P. 8(a)(2). While a court must accept as true all allegations in the plaintiff's complaint, and view them in the light most favorable to the plaintiff, *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008), a court is not required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). The complaint must state sufficient facts to show that the legal allegations are not simply possible, but plausible. *Phillips*, 515 F.3d at 234. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

### III.

### A.

As to Count I, Ameriquest argues that the anti-dilution protection enjoyed by Ciolino pertained only to his stock options, not the shares of stock conveyed to him upon the exercise of those options. Put differently, Ameriquest contends that Ciolino's anti-dilution rights extinguished upon the exercise of his stock options. According to Ameriquest, the language of the MOU is clear and unambiguous on this point.

To the extent that the plain language of a contract is ambiguous, extrinsic evidence is admissible to explain its provisions. *In re New Valley Corp.*, 89 F.3d 143, 150 (3d Cir. 1996). In addition, under New Jersey law, extrinsic evidence is admissible to explain the meaning of contract provisions "even when the contract on its face is free from ambiguity."[7] *Conway v. 287 Corporate Ctr. Assocs.*, 187 N.J. 259, 269, 901 A.2d 341 (2006).

In light of the foregoing legal principles, the Court need not presently make a determination as to whether the MOU is ambiguous. Regardless of any holding the Court might make with respect to that issue, extrinsic evidence would be admissible to illuminate the intentions of the parties upon entering into that agreement. Therefore, the parties must be afforded the opportunity, through discovery, to marshal all available evidence relevant to their intentions in signing the MOU.[8] As a result,

---

[7] In *Conway*, Justice Wallace articulated the reasons underlying the "broad use of extrinsic evidence" to interpret a contract under New Jersey law, as follows:

> The polestar of construction is the intention of the parties to the contract as revealed by the language used, taken as an entirety; and, in the quest for the intention, the situation of the parties, the attendant circumstances, and the objects they were thereby striving to attain are necessarily to be regarded. The admission of evidence of extrinsic facts is not for the purpose of changing the writing, but to secure light by which to measure its actual significance.

*Conway v. 287 Corporate Ctr. Assocs.*, 187 N.J. 259, 269, 901 A.2d 341 (2006).

[8] Notwithstanding the undeveloped state of the record, Ameriquest attempts to discern the intent of the parties upon entering into the MOU. According to Ameriquest, the construction of the MOU advanced by Ciolino is

Ameriquest's motion will be denied as to Count I.[9]

**B.**

As to Count II, Ameriquest concedes that Ciolino is entitled to certain documents pursuant to § 14A:5-28 of the New Jersey Business Corporation Act (the "Act").  However, Ameriquest argues that the Act entitles him to "a much more limited subset of documents" than he seeks in the present action.  (Def.'s Br. 9)

Pursuant to § 14A:5-28(2), any shareholder is entitled to receive copies of a corporation's "balance sheet as at the end of the preceding fiscal year, and its profit and loss and surplus statement for such fiscal year."  Under § 14A:5-28(3), "any person who shall have been a shareholder of record of a corporation for at least six months immediately preceding his demand, or any person holding . . . at least 5% of the outstanding shares of any class or series, upon at least five days' written demand shall have the right for any proper purpose to examine . . . its minutes of the proceedings of its shareholders and record of shareholders and to make extracts therefrom . . . ."

---

"illogical" insofar as it would vest him with "the perpetual right to maintain a 5% interest in the company[]" and permit him to "forever be compensated by Ameriquest, without Ameriquest receiving a single benefit."  (Def.'s Br. 6-7)  Such arguments are better reserved for the summary judgment stage, when more complete information regarding the parties' intent is available.

[9] Even in a case where a stockholder concedes that he has no express anti-dilution rights, dilution may nevertheless be improper.  For example, it is improper to issue stock in exchange for inadequate consideration to certain shareholders, without offering other shareholders a corresponding opportunity to acquire additional shares.

In addition, § 14A:5-28(4) permits "any court, upon proof by a shareholder of proper purpose, irrespective of the period of time during which the shareholder shall have been a shareholder of record, and irrespective of the number of shares held by him, to compel the production for examination by such shareholder of the books and records of account, minutes, and record of shareholders of a corporation." That paragraph also vests broad discretion in any court to "prescribe any limitations or conditions with reference to the inspection, or award any other or further relief as the court may deem just and proper." N.J.S.A. § 14A:5-28(4).

According to Ameriquest, Ciolino has already been provided access to all of the documents necessary to fulfill its obligations under § 14A:5-28(2) and (3). In support of that proposition, Ameriquest offers a letter dated February 19, 2009, as an exhibit to its brief. The letter indicates that Ciolino was provided with Ameriquest's most recent fiscal statements, and represents that he will be permitted to access the register of shareholders and the shareholder minutes. (Def.'s Ex. 3-- Ltr. from Graham R. Laub, Feb. 19, 2009) The fundamental problem with this putative "proof" of compliance with the Act is that the letter is not cognizable in the context of the current motion.

When evaluating a motion to dismiss, the Court considers "only the allegations in the complaint, exhibits attached to the

complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of America*, 361 F.3d 217, 221 n.3 (3d Cir. 2004). A document that forms the basis of a claim is one that is "integral to or explicitly relied upon in the complaint." *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

The letter of February 19, provided by Ameriquest, does not fall within any of the foregoing categories, and hence cannot be considered at this juncture.[10] Thus, Ameriquest has not presently established its compliance with § 14A:5-28(2) and (3).

Moreover, even if the Court were to accept the February 19 letter as proof of Ameriquest's compliance with § 14A:5-28(2) and (3), dismissal of Count II would still be inappropriate in light of the additional documents potentially available to Ciolino under § 14A:5-28(4). Ameriquest acknowledges the possible significance of § 14A:5-28(4), but argues that the documents already provided to Ciolino "are adequate to accomplish his purpose." (Def.'s Br. 10) The Court is not persuaded that such a conclusion can be drawn at present. Further development of the record is necessary to discern whether Ciolino's purposes are proper, and whether those purposes entitle him to inspect additional Ameriquest corporate records.

---

[10] At most, the Complaint refers to the January 19 letter in a non-specific sense, insofar as Ciolino alleges that "Ameriquest responded to [his] request by offering to make only certain of the requested items, such as its share register and minutes, available for inspection." (Compl. ¶ 10)

10

**IV.**

For the reasons stated above, the Motion to Dismiss will be denied. The Court will issue an appropriate Order.

Dated: August   10  th, 2009

                                                s/ Joseph E. Irenas
                                              **JOSEPH E. IRENAS, S.U.S.D.J.**